**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTTSDALE INDEMNITY COMPANY, an Ohio Corporation, and NATIONAL CASUALTY COMPANY, a Wisconsin Corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: _____ |
| VILLAGE OF CRESTWOOD, an Illinois Municipal Corporation; CHESTER STRANCZEK, individually; ROBERT STRANCZEK, individually; FRANK SCACCIA, individually, AND, JOSEPH MARZANO, on behalf of himself and a class of similarly situated individuals; KATHRYN TORRISI, individually, and on behalf of all others similarly situated; DIANA DELAROSA, individually and on behalf of all those similarly situated, and individually in the capacity as independent executor of the Estate of Mary Grant and on behalf of all those similarly situated; SHIRLEY OLATUNDE, LANA OLATUNDE, and JANET ELLER, individually and on behalf of a class of similarly situated individuals; REGINA ROWAN, individually and on behalf of all other similarly situated; MICHELE MAAN DE KOK, as Executor of the Estate of John Maan De Kok, deceased; SHIRLEY OLATUNDE, individually and on behalf of all others similarly situated; PEOPLE OF THE STATE OF ILLINOIS *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois; and GLORIA E. BARRERA, individually and as Special Administrator of the Estates of Rodolfo Sosa, deceased, and Irma Sosa, deceased, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiffs Scottsdale Indemnity Company ("Scottsdale") and National Casualty Company ("National Casualty"), by and through their attorneys, KARBAL, COHEN, ECONOMOU, SILK, & DUNNE, LLC, and for their Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202, state:

## NATURE OF ACTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Scottsdale and National Casualty seek a determination of the parties' rights and obligations under insurance policies issued by Scottsdale and National Casualty to the Village of Crestwood with respect to the Underlying Lawsuits identified in this Complaint.  Disputes exist between the parties regarding whether there is coverage for the Underlying Lawsuits under the Scottsdale and National Casualty policies.  Consequently, Scottsdale and National Casualty seek declarations that:

   (a)   The Scottsdale and National Casualty policies do not provide coverage for the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Frank Scaccia for any of the causes of action in the Underlying Lawsuits;

   (b)   Scottsdale and National Casualty have no duty to defend the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Frank Scaccia in the Underlying Lawsuits under the Scottsdale and National Casualty policies; and

   (c)   Scottsdale and National Casualty have no duty to indemnify the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Frank Scaccia in the Underlying Lawsuits under the Scottsdale and National Casualty policies.

## PARTIES

2.     Plaintiff Scottsdale Indemnity Company is an insurance company and citizen of, and organized and existing under the laws of, the State of Ohio, with its principal place of business located at 8877 North Gainey Center Drive, Scottsdale, Arizona 85258.

3.     Plaintiff National Casualty is an insurance company and citizen of, and organized and existing under the laws of, the State of Wisconsin, with its principal place of business located at 8877 North Gainey Center Drive, Scottsdale, Arizona 85258.

4.     Defendant Village of Crestwood is an Illinois citizen and municipal corporation and the named insured under insurance policies issued by Scottsdale and National Casualty.  The

Village of Crestwood is seeking coverage under the Scottsdale and National Casualty insurance policies.

5.    Based on information and belief, Defendant Chester Stranczek is a citizen and resident of Illinois, and former mayor of the Village of Crestwood from at least 1969 through October 2007. Chester Stranczek is seeking coverage under insurance policies issued to the Village of Crestwood by Scottsdale and National Casualty.

6.    Based on information and belief, Defendant Robert Stranczek is a citizen and resident of Illinois, and current mayor of the Village of Crestwood since November 2007. Robert Stranczek may seek insurance coverage under insurance policies issued to the Village of Crestwood by Scottsdale and National Casualty.

7.    Based on information and belief, Defendant Frank Scaccia is a citizen and resident of Illinois, and was the certified operator of the Crestwood water supply from 1988 through approximately August 2008. Frank Scaccia may seek insurance coverage under insurance policies issued to the Village of Crestwood by Scottsdale and National Casualty. The Village of Crestwood, Chester Stranczek, Robert Stranczek, and Frank Scaccia will be referred to collectively as "Crestwood Defendants." Chester Stranczek, Robert Stranczek, and Frank Scaccia will be referred to collectively as "Individual Crestwood Defendants."

8.    Based on information and belief, Defendants Joseph Marzano, on behalf of himself and a class of similarly situated individuals; Kathryn Torrisi, individually, and on behalf of all others similarly situated; Diana Delarosa, individually and on behalf of all those similarly situated, and individually in the capacity as independent executor of the Estate of Mary Grant and on behalf of all those similarly situated; Shirley Olatunde, Lana Olatunde, and Janet Eller, individually and on behalf of a class of similarly situated individuals; Regina Rowan,

individually and on behalf of all other similarly situated; Michele Maan De Kok, as Executor of the Estate of John Maan De Kok, deceased; Shirley Olatunde, individually and on behalf of all others similarly situated; People of the State of Illinois *ex rel.* Lisa Madigan, Attorney General of the State of Illinois; and Gloria E. Barrera, individually and as Special Administrator of the Estates of Rodolfo Sosa, deceased, and Irma Sosa, deceased ("Nominal Defendants") are citizens and residents of the State of Illinois, except for Defendant Janet Eller, who is believed to be a citizen and resident of the State of Tennessee. The Nominal Defendants are named in this matter only as parties with a possible interest in the insurance dispute among Scottsdale, National Casualty, the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Frank Scaccia. Should any Nominal Defendants agree to be bound by the decision in this case, Scottsdale and National Casualty will dismiss them from this lawsuit.

## JURISDICTION AND VENUE

9.      This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10.      An actual, justiciable controversy exists between Plaintiffs and Defendants within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage provided under the Scottsdale and National Casualty policies, as more particularly described below.

11.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this action took place in this District.

## THE UNDERLYING LAWSUITS

13.     This action addresses insurance coverage for nine lawsuits brought by the Nominal Defendants against the Village of Crestwood arising out of the Crestwood Defendants' alleged provision of contaminated tap water to water consumers. The lawsuits include six class-action lawsuits, two wrongful-death lawsuits, and a lawsuit brought by the Attorney General of the State of Illinois on behalf of the People of the State of Illinois (the "Underlying Lawsuits"). Based on information and belief, the six class-action lawsuits will be consolidated into one lawsuit. Chester Stranczek, Robert Stranczek, and Frank Scaccia are named as defendants in some but not all of the Underlying Lawsuits.

14.     The Complaints in the Underlying Lawsuits all arise out of similar factual allegations. The Complaints allege that consumers of tap water in the Village of Crestwood were unknowingly drinking tap water contaminated with toxic chemicals linked to health problems, including cancer. The Complaints allege that the source of contamination was a municipal well.

15.     The Complaints further allege that in 1986, government officials admonished the Village of Crestwood regarding the presence of dangerous chemicals in the well, which chemicals included vinyl chloride. The Complaints allege that the Village of Crestwood then announced that it would purchase treated water exclusively from Lake Michigan sources. The Complaints allege, however, that the Village of Crestwood did not inform its residents of the discovered contamination and continued to supply to consumers at least some water from the contaminated well from 1986 through 2007. The Complaints allege that following testing by the Environmental Protection Agency, the well was shut down in December 2007.

16.     The plaintiffs in each Complaint in the Underlying Lawsuits allege that since 1986, the Village of Crestwood has been aware that its tap water supply had become

contaminated by dangerous chemicals, including vinyl chloride, but that the Village of Crestwood concealed these facts from its residential and/or commercial water consumers.

17.    On or about April 23, 2009, Joseph Marzano, on behalf of himself and a class of similarly situated individuals, commenced a civil action against the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Doe Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Marzano, et al. v. Village of Crestwood, et al.*, No. 09 CH 16096 ("*Marzano* Lawsuit"). A true and correct copy of the Complaint filed in the *Marzano* Lawsuit is attached hereto as Exhibit A ("*Marzano* Complaint").

18.    The *Marzano* Complaint alleges that the defendants concealed the presence of dangerous chemicals in tap water, while "continuing to unscrupulously cause the tainted water to be pumped into [Plaintiffs'] residences," despite admonitions from the state in 1986 regarding the water. The *Marzano* Complaint states the following causes of action: (1) negligence (against all defendants); (2) willful and wanton acts or omissions (against all defendants); (3) breach of implied contract in fact and/or in law (against Crestwood and Doe Defendants); and (4) declaratory judgment (against all defendants). The *Marzano* Complaint requests damages, a declaration of rights, the establishment of a constructive trust of money collected from water bills, and attorneys' fees and costs.

19.    On or about April 30, 2009, Kathryn Torrisi, individually, and on behalf of all others similarly situated, commenced a civil action against the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Doe Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Torrisi, et al. v. Village of Crestwood, et al.*, No. 09 CH 16356 ("*Torrisi* Lawsuit"). A true and correct copy of the Complaint filed in the *Torrisi* Lawsuit is attached hereto as Exhibit B ("*Torrisi* Complaint").

20. The *Torrisi* Complaint states the following causes of action: (1) negligence (against all defendants); (2) willful and wanton acts or omissions (against all defendants); (3) breach of implied contract in fact and/or in law (against Crestwood and Doe Defendants); and (4) declaratory judgment (against all defendants). The *Torrisi* Complaint requests damages, a declaration of rights, the establishment of a constructive trust of money collected from water bills, and attorneys' fees and costs.

21. On or about May 1, 2009, Diana Delarosa, individually and on behalf of all those similarly situated, and individually in the capacity as independent executor of the Estate of Mary Grant and on behalf of all those similarly situated, commenced a civil action against the Village of Crestwood in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Delarosa, et al. v. Village of Crestwood, et al.*, No. 09 CH 16391 ("*Delarosa* Lawsuit"). A true and correct copy of the Complaint filed in the *Delarosa* Lawsuit is attached hereto as Exhibit C ("*Delarosa* Complaint").

22. Diana Delarosa sues in a representative capacity as independent executor of the estate of Mary Jane Grant, Delarosa's mother, who allegedly lived and worked in Crestwood until dying of liver disease and other health problems in December 2007. Delarosa also brings the lawsuit on behalf of four classes:

Class A (Exposure Class):
All individuals who resided in Crestwood and were exposed to drinking water between 1986 and 2007, in such an amount that they should be tested for the onset of conditions associated with exposure to the chemicals found in the water supply.

Class B (Non-Resident Exposure Class):
All individuals who worked or attended schools in Crestwood and became exposed to drinking water between 1986 and 2007, in such an amount that they should be tested for the onset of conditions associated with exposure to the chemicals found in the water supply.

Class C (Property Diminution):

>   All individuals who own property in Crestwood and have lost value in their property on account of the presence and exposure to hazardous chemicals, as well as the publicity thereto.

Class D (Presently or Previously Injured Parties):

>   All individuals who resided, worked, or attended schools in Crestwood and were exposed to drinking water between 1986 and 2007, which exposure would lead to conditions including cancers, and who in fact have developed such a condition or cancer.

23.     The *Delarosa* Complaint alleges that at all relevant times, the Village of Crestwood advised its residents of the safety of the water provided to them, despite knowledge of the hazardous conditions. The *Delarosa* Complaint alleges that the Village of Crestwood knew that the well was likely contaminated by releases from a dry cleaning establishment at a mall, after the mall's operator requested that its site be provided with United States Environmental Protection Agency ("EPA")/Illinois Environmental Protection Agency ("IEPA") clean-up status, even though the clean up was never done. The *Delarosa* Complaint states the following causes of action: (1) private nuisance (on behalf of Class C); (2) negligence (on behalf of all classes); (3) willful and wanton conduct (on behalf of all classes); (4) fraud on the public (on behalf of all classes); and (5) trespass (on behalf of Class C). The *Delarosa* Complaint requests damages and attorneys' fees and costs.

24.     On or about May 6, 2009, Shirley Olatunde, Lana Olatunde, and Janet Eller, individually and on behalf of a class of similarly situated individuals, commenced a civil action against the Village of Crestwood, Chester Stranczek, Robert Stranczek, and Doe Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Olatunde, et al. v. Village of Crestwood, et al.*, No. 09 CH 16516 ("*Olatunde I* Lawsuit"). A true and correct copy of the Complaint filed in the *Olatunde I* Lawsuit is attached hereto as Exhibit D ("*Olatunde I* Complaint").

25. The *Olatunde I* Complaint alleges that the three named plaintiffs have suffered various health-related problems, including a bacterial infection, a pituitary tumor, a fibroid tumor, and breast cancer. The named plaintiffs bring a class-action lawsuit on behalf of persons who suffer from health-related problems as a result of the contaminated water and all persons who lived and/or worked in the Village of Crestwood, who "live in fear of future health-related problems." The *Olatunde I* Complaint states the following causes of action: (1) willful and wanton conduct (against all defendants); and (2) negligence (against all defendants).

26. On or about May 7, 2009, Regina Rowan, individually and on behalf of all other similarly situated, commenced a civil action against the Village of Crestwood and Doe Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Rowan, et al. v. Village of Crestwood, et al.*, No. 09 CH 16567 ("*Rowan* Lawsuit"). A true and correct copy of the Complaint filed in the *Rowan* Lawsuit is attached hereto as Exhibit E ("*Rowan* Complaint").

27. The *Rowan* Complaint alleges that the dry-cleaning solvent emanating from the mall—PCE—soaks into the ground, and then forms a plume that can move quickly into groundwater and breaks down into DCE (dichloroethylene) and vinyl chloride, neither of which occur naturally in the environment. The *Rowan* Complaint alleges that in 1986, the IEPA tested for and discovered in the Village of Crestwood's well the PCE-related chemicals, at which time Crestwood told the State it was placing the well on "emergency-backup status." The *Rowan* Complaint alleges that in October 2007, the IEPA took water samples from the contaminated well and found that the level of vinyl chloride in the water was more than twice the legal limit for drinking water. The *Rowan* Complaint alleges that the Village of Crestwood knew that the

well was contaminated with toxic chemicals linked to causing cancer and other life-threatening diseases.

28.     The *Rowan* Complaint states the following causes of action: (1) negligence; (2) strict liability - ultra hazardous activity; (3) public nuisance; and (4) willful and wanton conduct.    The *Rowan* Complaint requests damages, costs of medical monitoring, punitive damages, and attorneys' fees and costs.

29.     On or about May 14, 2009, Michele Maan De Kok, as Executor of the Estate of John Maan De Kok, deceased, commenced a civil action against the Village of Crestwood and Chester Stranczek in the Law Division of the Circuit Court of Cook County, Illinois, entitled *Maan De Kok, et al. v. Village of Crestwood, et al.*, No. 09-L-5746 ("*Maan De Kok* Lawsuit"). A true and correct copy of the Complaint filed in the *Maan De Kok* Lawsuit is attached hereto as Exhibit F ("*Maan De Kok* Complaint").

30.     The *Maan De Kok* Complaint alleges that in 2000, John Maan De Kok was diagnosed with stage IV Non-Hodgkin's lymphoma, which resulted from his consumption of Crestwood's contaminated water.    On October 2, 2003, John Maan De Kok died from lymphoma.    The *Maan De Kok* Complaint alleges that as a result of Defendants' "corrupt or malicious motives," John Maan De Kok "died, suffered conscious pain and suffering, and his estate has suffered severe and permanent personal and pecuniary loss."    In the alternative, the *Maan De Kok* Complaint alleges that Defendants negligently caused John Maan De Kok's death. The *Maan De Kok* Complaint further alleges that the Village of Crestwood "designed, manufactured, distributed, and sold municipal water" that the Village of Crestwood "should have known was unsafe," which water caused John Maan De Kok's death.

31.     The *Maan De Kok* Complaint states the following causes of action: (1) wrongful death - willful and wanton (against Crestwood); (2) survival – willful and wanton (against Crestwood); (3) wrongful death - negligence (against Crestwood); (4) survival - negligence (against Crestwood); (5) wrongful death – product liability (against Crestwood); (6) survival - product liability (against Crestwood); (7) wrongful death - willful and wanton (against Chester Stranczek); (8) survival - willful and wanton (against Chester Stranczek); (9) wrongful death - negligence (against Chester Stranczek); (10) survival - negligence (against Chester Stranczek). The *Maan De Kok* Complaint requests damages and costs of suit.

32.     On or about May 18, 2009, Shirley Olatunde, individually and on behalf of all others similarly situated, commenced a civil action against the Village of Crestwood and Doe Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *Olatunde, et al. v. Village of Crestwood, et al.*, No. 09 CH 16825 ("*Olatunde II* Lawsuit"). A true and correct copy of the Complaint filed in the *Olatunde II* Lawsuit is attached hereto as Exhibit G ("*Olatunde II* Complaint").

33.     The *Olatunde II* Complaint alleges that the Village of Crestwood's annual "consumer confidence reports" stated that the Village of Crestwood only pumped treated water from Lake Michigan into its water supply, but that the Village of Crestwood pumped water from a well, which water Crestwood knew was contaminated with chemicals causing cancer and other life-threatening diseases. The *Olatunde II* Complaint states the following causes of action: (1) negligence; (2) strict liability - ultra hazardous activity; (3) public nuisance; and (4) willful and wanton conduct. The *Olatunde II* Complaint requests damages, costs of medical monitoring, punitive damages, and attorneys' fees and costs.

34.     On or about June 9, 2009, People of the State of Illinois *ex rel.* Lisa Madigan, Attorney General of the State of Illinois, commenced a civil action against the Village of Crestwood, Robert Stranczek, Chester Stranczek, and Frank Scaccia in the Chancery Division of the Circuit Court of Cook County, Illinois, entitled *People of the State of Illinois v. Village of Crestwood, et al.*, No. 09 CH 18361 ("Attorney General Lawsuit"). A true and correct copy of the Complaint filed in the Attorney General Lawsuit is attached hereto as Exhibit H ("Attorney General Complaint").

35.     The Attorney General Complaint alleges that at least some of the tap water provided by the Village of Crestwood during each year from 1985 through 2007 came from the contaminated well. The Attorney General Complaint alleges that vinyl chloride, one of the contaminants identified in the water, can cause damage to the nervous system during short-term exposure, and can cause damage to the liver and cancer during long-term exposure.

36.     The Attorney General Complaint brings various statutory and administrative causes of action arising out of the Village of Crestwood's provision of contaminated water to its residents and corporate consumers. Those causes of action are (1) providing false information in annual drinking water quality consumer confidence reports: failure to identify Well #1 as a drinking water source from 1999 through 2008 (against all defendants); (2) providing false information in annual drinking water quality consumer confidence reports: failure to report information on contaminants subject to mandatory monitoring from 1999 through 2008 (against all defendants); (3) providing false information in annual drinking water quality consumer confidence reports: failure to report information on contaminants subject to mandatory monitoring from 1999 through 2008 (against all defendants); (4) providing false information in monthly operating reports (against Crestwood and Scaccia); (5) failure to test well water for

inorganic chemicals, volatile organic chemicals and synthetic organic chemicals (against Crestwood, Chester Stranczek, and Scaccia); (6) failure to supply assuredly safe water (against all defendants); (7) failure to monitor and record drinking water chlorination (against Crestwood, Chester Stranczek, and Scaccia); (8) failure to timely submit drinking water monthly operating reports (against Crestwood, Chester Stranczek, and Scaccia); and (9) failure to maintain proper elevation for the overflow pipe for the ground storage tank (against Crestwood, Robert Stranczek, and Scaccia). The Attorney General Complaint seeks relief in the form of enjoining Defendants from further violations, ordering defendants to undertake corrective action, civil penalties, and attorneys' fees and costs.

37. On or about June 17, 2009, Gloria E. Barrera, individually and as Special Administrator of the Estates of Rodolfo Sosa, deceased, and Irma Sosa, deceased, commenced a civil action against the Village of Crestwood and Chester Stranczek in the Law Division of the Circuit Court of Cook County, Illinois, entitled *Barrera, et al. v. Village of Crestwood, et al.*, No. 09-L-7091 ("*Barrera* Lawsuit"). A true and correct copy of the Complaint filed in the *Barrera* Lawsuit is attached hereto as Exhibit I ("*Barrera* Complaint").

38. The named plaintiff is the daughter of Rodolfo and Irma Sosa, who were residents of the Village of Crestwood from 1996 until their deaths. The *Barrera* Complaint alleges that after being notified by the IEPA after 1985 of the contamination in the water, the Village of Crestwood represented to the IEPA that it was purchasing all of its drinking water from the Village of Alsip, which had originally obtained the water from Lake Michigan. The *Barrera* Complaint alleges, however, that Village of Crestwood continued to supply to its consumers water from the contaminated well. The *Barrera* Complaint alleges that on March 9, 2009, Rodolfo Sosa died because of stomach cancer, which resulted from his consumption of the

Village of Crestwood's contaminated water. The *Barrera* Complaint further alleges that on May 19, 2009, Irma Sosa died as a result of colon-rectum cancer, which similarly resulted from her consumption of the Village of Crestwood's contaminated water. The *Barrera* Complaint alleges that the decedents' next of kin, including daughter Gloria E. Barrera, son Rodolfo A. Sosa, daughter Dariela L. Sosa, grandson Andrew J. Barrera, and granddaughter Eleyna M. Baudo, have suffered and sustained substantial pecuniary loss and damages as a result of the deaths of Rodolfo and Irma Sosa.

39.     The *Barrera* Complaint states the following causes of action: (1) wrongful death - negligence (Rodolfo Sosa against Crestwood); (2) wrongful death - willful and wanton (Rodolfo Sosa against Crestwood); (3) survival statute - negligence (Rodolfo Sosa against Crestwood); (4) survival statute - willful and wanton (Rodolfo Sosa against Crestwood); (5) wrongful death - negligence (Rodolfo Sosa against Chester Stranczek); (6) wrongful death - willful and wanton (Rodolfo Sosa against Chester Stranczek) (7) survival statute - negligence (Rodolfo Sosa against Chester Stranczek); (8) survival statute - willful and wanton (Rodolfo Sosa against Chester Stranczek); (9) wrongful death - negligence (Irma Sosa against Crestwood); (10) wrongful death – willful and wanton (Irma Sosa against Crestwood); (11) survival statute - negligence (Irma Sosa against Crestwood); (12) survival statute - willful and wanton (Irma Sosa against Crestwood); (13) wrongful death – negligence (Irma Sosa against Chester Stranczek); (14) wrongful death – willful and wanton (Irma Sosa against Chester Stranczek) (15) survival statute - negligence (Irma Sosa against Chester Stranczek); (16) survival statute - willful and wanton (Irma Sosa against Chester Stranczek); (17) Family Expense Statute for Rodolfo Sosa (Gloria E. Barrera against Crestwood); (18) Family Expense Statute for Rodolfo Sosa (Gloria E. Barrera against Chester Stranczek); (19) Family Expense Statute for

Irma Sosa (Gloria E. Barrera against Crestwood); and (20) Family Expense Statute for Irma Sosa (Gloria E. Barrera against Chester Stranczek). The *Barrera* Complaint requests damages and costs of suit.

### THE INSURANCE POLICIES

40.     Scottsdale issued to the Village of Crestwood primary Public Entity Policies for single-year policy periods, beginning October 1, 1998 to October 1, 1999, through the policy year, October 1, 2008 to October 1, 2009. The following Public Entity Polices issued by Scottsdale to the Village of Crestwood are attached as exhibits as follows:

| Exhibit | Policy Number | Policy Period |
|---------|---------------|---------------|
| J | PEI 0000331 | 10/1/98 – 10/1/99 |
| K | PEI 0002675 | 10/1/99 – 10/1/00 |
| L | PEI 0003618 | 10/1/00 – 10/1/01 |
| M | PEI 0003737 | 10/1/01 – 10/1/02 |
| N | PEI 0004306 | 10/1/02 – 10/1/03 |
| O | PEI 0004447 | 10/1/03 – 10/1/04 |
| P | PEI 0004627 | 10/1/04 – 10/1/05 |
| Q | PEI 0004740 | 10/1/05 – 10/1/06 |
| R | PEI 0004839 | 10/1/06 – 10/1/07 |
| S | PEI 0005136 | 10/1/07 – 10/1/08 |
| T | PEI 0005327 | 10/1/08 – 10/1/09 |

41.     The following policy language is provided in the 2008-2009 Public Entity Policy. Although earlier policy years provided different policy language, the differences for purposes of analyzing coverage are not significant.  Where relevant, such language differences will be noted. The 2008-2009 Public Entity Policy provides General Liability Coverage under form PEI-GL-1 (2-00) as follows:

### GENERAL LIABILITY COVERAGE FORM
### OCCURRENCE COVERAGE

\* \* \*

Throughout this policy the words "you" and "your" refer to the Named Insured in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the insurance company shown on the Common Policy Declarations as the insurer.

Within this Coverage Form the word "insured" means any person or organization qualifying as such under SECTION III—GENERAL LIABILITY—WHO IS AN INSURED.

\* \* \*

### SECTION I – COVERAGES

Bodily Injury, Property Damage, Personal Injury, Advertising Injury, and Employee Benefits Injury.

1.     We will pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury," "advertising injury" or "employee benefits injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury," "advertising injury" or "employee benefits injury" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" or "offense" and settle any such "claim" or "suit" that may result. . . .

\* \* \*

16

2.    This insurance applies:

    a.    To "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)    The "bodily injury" or "property damage" occurs during the "policy period."

    b.    To:

        (1)    "Personal injury" caused by an "offense" arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

* * *

## SECTION II – EXCLUSIONS

This Coverage Form does not apply to:

1.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

12.    Personal Injury or Advertising Injury

"Personal Injury" or "advertising injury":

* * *

    c.    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; . . .

* * *

17

22.     Failure to Supply

"Bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity or steam. This exclusion does not apply if the failure to supply results from sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity or steam.

\* \* \*

## SECTION III – GENERAL LIABILITY – WHO IS AN INSURED

Each of the following is an insured:

1.      You.

\* \* \*

3.      Your "employees" and authorized volunteers, including emergency medical technicians and paramedics; but only for acts within the scope of their employment as authorized by you . . . .

\* \* \*

4.      Any duly elected or appointed officials and members of your governing body.

\* \* \*

## SECTION VI – GENERAL LIABILITY - DEFINITIONS

\* \* \*

14.     "Occurrence" means, with respect to "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15.     "Offense" means, with respect to:

\* \* \*

b.      "Personal injury," an offense described in the definition of "personal injury";

\* \* \*

16.    "Personal injury" means injury arising out of your business, other than "bodily injury" or "advertising injury," arising out of one or more of the following "offenses":

            \* \* \*

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

            \* \* \*

18.    "Property damage" means;

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

            \* \* \*

42.    The 2008-2009 Public Entity Policy provides Public Officials Liability Coverage under form PEI-PO-2 (8-02) as follows:

**PUBLIC OFFICIALS LIABILITY COVERAGE FORM
CLAIMS MADE COVERAGE**

            \* \* \*

Throughout this policy the words "you" and "your" refer to the Named Insured in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the insurance company shown on the Common Policy Declarations as the insurer.

Within this Coverage Form the word "insured" means any person or organization qualifying as such under SECTION III—PUBLIC OFFICIALS LIABILITY—WHO IS AN INSURED.

            \* \* \*

## SECTION I – COVERAGES

1.      Insuring Agreement

We will pay on behalf of the insured all "loss" resulting from "public officials wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period" or Extended Reporting Period. The "public officials wrongful act(s)" must occur within the "coverage territory."

\* \* \*

## SECTION II – EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

1.      Based upon or attributable to any insured enjoying unjust enrichment; or gaining profit, advantage or remuneration to which the insured is not entitled;

2.      Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured;

3.      Brought about or contributed to by fraud, dishonesty, bad faith or malicious act(s) of an insured; however, notwithstanding the foregoing, the insured will be protected under the terms of this Coverage Form, as to any "claim(s)" upon which "suit" may be brought against them by reason of any alleged fraud, dishonesty, bad faith or malicious act(s) on the part of any insured, unless a judgment or other final adjudication thereof adverse to such insured will establish that acts of fraud, dishonesty, bad faith or malicious act(s) committed by such insured were material to the cause of action so adjudicated;

4.      For any damage arising out of "bodily injury," or for damage to or destruction of any property, including diminution of value or loss of use thereof;

5.      For false arrest, false imprisonment, libel, slander, defamation, invasion of privacy, wrongful eviction, assault, battery, malicious prosecution or abuse of process;

\* \* \*

8.      Arising out of:

     a.      Any "public officials wrongful act" which takes place prior to the "policy period" if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim";

* * *

9.      For "claim(s)," demands, or actions seeking relief or redress in any form other than monetary damages, or for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment or declaratory relief or injunctive relief; however, we will afford defense to the insured for "suit(s)" in which monetary damages are requested if not otherwise excluded;

10.     For any cost, civil fine or penalty against any insured arising out of any complaint or enforcement action from any federal, state or local governmental regulatory agency;

* * *

12.     For "claim(s)" arising out of:

     a.      Procurement of goods or services;

* * *

## SECTION III – PUBLIC OFFICIALS – WHO IS AN INSURED

Each of the following is an Insured:

1.      You;

2.      All persons who were, now are, or will be your lawfully elected, appointed or employed officials;

* * *

4.      All your employees and all persons who perform service on a volunteer basis for you and under your direction and control;

* * *

21

## SECTION VI – PUBLIC OFFICIALS LIABILITY – DEFINITIONS

\* \* \*

3.    "Loss" means an monetary amount which the insured is legally obligated to pay as a result of "public officials wrongful act(s)" covered by this Coverage Form and will include, but not be limited to, judgments and settlements, but "loss" will not include fines imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

\* \* \*

5.    "Public officials wrongful act" means:

Any actual or alleged:

a.    Error or omission, neglect or breach of duty;

\* \* \*

by you or which arises out of the discharge of duties for you, individually or collectively.

\* \* \*

43.    The 2008-2009 Public Entity Policy contains Common Liability Exclusions and Common Liability Definitions under form PEI-COM-2 (10-04) as follows:

### COMMON LIABILITY EXCLUSIONS AND COMMON LIABILITY DEFINITIONS

The Coverage Forms shown below are subject to the following Common Liability Exclusions and Common Liability Definitions:

### General Liability Coverage Form (Occurrence Coverage)

\* \* \*

### Public Officials Liability Coverage Form (Claims Made Coverage)

\* \* \*

## A.    COMMON LIABILITY EXCLUSIONS

The following exclusions apply to the liability coverages designated in the Common Policy Declarations.   Refer to the individual coverage forms for additional exclusions.

This policy does not apply to:

1.    Pollution

     a.    "Bodily injury," "property damage" or "personal injury" arising out of, or "wrongful act(s)" which result in the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

        Paragraph 1.a. does not apply to "bodily injury," "property damage" or "personal injury" arising out of, or "wrongful act(s)" which result in heat, smoke or fumes from a hostile fire:

        (1)    At or from any Named Insured's premises; or

        (2)    At or from any site or location on which any Named Insured or any contractors or subcontractors working directly or indirectly on any Named Insured's behalf are performing operations.

        As used in this exclusion, a hostile fire means one which becomes uncomfortable or breaks out from where it was intended to be.

     b.    Any loss, cost or expense arising out of any:

        (1)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (2)    "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.    Waste includes materials to be recycled, reconditioned or reclaimed.

\* \* \*

## B.     COMMON LIABILITY DEFINITIONS

Throughout this policy words and phrases that appear in quotation marks are defined terms.   The following definitions apply to the Liability coverages designated in the Common Policy Declarations.   Please refer to the individual coverage forms for additional definitions.

\* \* \*

2.      "Bodily injury" means bodily injury, mental anguish, emotional distress, sickness or disease sustained by any person, including death resulting from any of these at any time.

\* \* \*

7.      "Wrongful act(s)" means "law enforcement wrongful act(s)," "public officials wrongful act(s)," employment practices wrongful act(s)," "emergency dispatchers wrongful act(s)," or "firefighters wrongful act(s)."

\* \* \*

44.     The 2008-2009 Public Entity Policy also contains the following endorsement, under form PEI-39s (2-97):

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

**PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**

The coverage afforded by this policy under the GENERAL LIABILITY COVERAGE FORM does not apply to a "claim" of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If "suit" is brought against any insured for a "claim" falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action; however, we will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

\* \* \*

45.    All of the Pollution Exclusions in the Public Entity Policies issued by Scottsdale to the Village of Crestwood are identical to the exclusion quoted in the 2008-2009 Public Entity Policy, located in Paragraph 43 of this Complaint.    The 1998-1999 and 1999-2000 Public Entity Policies provide the Pollution Exclusion under form PEI-P-3 (01-98), which applies to all liability coverages in the policies, including the General Liability Coverage and the Public Officials Liability Coverage.    The 2000-2001, 2001-2002, and 2002-2003 Public Entity Policies provide the Pollution Exclusion under form PEI-COM-2 (01-00), which applies to all liability coverages in the policies, including the General Liability Coverage and the Public Officials Liability Coverage.    The 2003-2004 and 2004-2005 Public Entity Policies provide the Pollution Exclusion under form PEI-COM-2 (02-03), which applies to all liability coverages in the policies, including the General Liability Coverage and the Public Officials Liability Coverage. The 2004-2005, 2005-2006, 2006-2007 and 2007-2008 Public Entity Policies provide the Pollution Exclusion under form PEI-COM-2 (10-04), which applies to all liability coverages in the policies, including the General Liability Coverage and the Public Officials Liability Coverage.

46.    National Casualty issued to the Village of Crestwood either excess or umbrella policies, for single-year policy periods, beginning October 1, 1998 to October 1, 1999, through the policy year, October 1, 2008 to October 1, 2009.    The following Excess Liability, Umbrella Liability, and Commercial Liability Umbrella Polices issued by National Casualty to the Village of Crestwood are attached as exhibits as follows:

| Exhibit | Policy Number | Policy Period |
|---------|---------------|---------------|
| U | XL 00015442 | 10/1/98 – 10/1/99 |
| V | XL 00015824 | 10/1/99 – 10/1/00 |
| W | XL 00016037 | 10/1/00 – 10/1/01 |
| X | UM 00029051 | 10/1/01 – 10/1/02 |
| Y | UM 00029789 | 10/1/02 – 10/1/03 |
| Z | UM 00030038 | 10/1/03 – 10/1/04 |
| aa | UM 00030363 | 10/1/04 – 10/1/05 |
| bb | UM 00030770 | 10/1/05 – 10/1/06 |
| cc | UM 00031137 | 10/1/06 – 10/1/07 |
| dd | UM 00031526 | 10/1/07 – 10/1/08 |
| ee | UM 00031993 | 10/1/08 – 10/1/09 |

47.     The insuring agreements in the Excess Liability Policies—issued under policy numbers XL 00015442, XL 00015824, and XL 00016037—provide that the policies are "excess insurance and, except as otherwise stated in [the excess policies], follows the terms, conditions, exclusions, definitions and endorsements of the 'Underlying Insurance' . . . ." The "Underlying Insurance" is defined as the Public Entity Policies issued by Scottsdale to Crestwood for each respective policy period.

48.     The following policy language is provided in the 2008-2009 Commercial Liability Umbrella Policy.   Although earlier policy years provided different policy language, the differences for purposes of analyzing coverage are not significant.   Where relevant, such language differences will be noted.   The 2008-2009 Commercial Liability Umbrella Policy provides Commercial Liability Umbrella Coverage under form CU 00 01 (12-04) as follows:

## COMMERCIAL LIABILTY UMBRELLA
## COVERAGE FORM

\* \* \*

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

\* \* \*

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

  a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. . . . .

\* \* \*

  b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.      "Bodily injury" or "property damage" which occurs during the policy period was not, prior to the policy period, known to have occurred by an insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.      "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

                        * * *

(3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

                        * * *

2.     **Exclusions**

This insurance does not apply to:

a.     **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

i.   **Pollution**

(1)   "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2)   "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance."

* * *

r.   **Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1.   Insuring Agreement

a.   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. . . . .

\* \* \*

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.    Exclusions

This insurance does not apply to:

    a.    "Personal and advertising injury":

        (1)    Knowing Violation Of Rights Of Another

            Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

        (6)    Breach of Contract

            Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

\* \* \*

        (13)    Pollution

            Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\* \* \*

    b.    "Pollution cost or expense".

\* \* \*

## SECTION II – WHO IS AN INSURED

1.    Except for liability arising out of the ownership, maintenance, or use of "covered autos":

    a.    if you are designated in the Declarations as:

\* \* \*

(4)    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

b.    Each of the following is also an insured:

(1)    Your "volunteer workers" only while performing duties related to the conduct of your business, your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . . .

\* \* \*

## SECTION V – DEFINITIONS

\* \* \*

3.    "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\* \* \*

6.    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7.    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one of more of the following offenses:

\* \* \*

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

\* \* \*

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Pollution cost or expense" means any loss, cost or expense arising out of any:

    a.    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants"; or

    b.    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

\* \* \*

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

\* \* \*

49.     The 2008-2009 Commercial Liability Umbrella Policy provides Public Officials Liability Coverage by endorsement, under form UM-0291-PE (7-02) as follows:

## UNDERLYING CLAIMS-MADE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

\* \* \*

**SECTION I – COVERAGES** is replaced by the following:

This insurance shall follow the insuring agreement, exclusions, definitions, conditions, and any limitations of the claims-made "underlying insurance" specified in the Schedule of Underlying Insurance as the following Type of Coverage:

PUBLIC OFFICIALS LIABILITY

\* \* \*

50.     The 2008-2009 Commercial Liability Umbrella Policy contains the following exclusion added by endorsement under form UM-0735-PE (07-02):

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GOVERNMENTAL SUBDIVISIONS—EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

The following exclusion is added to paragraph 2. Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability and paragraph 2. Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability:

This insurance does not apply to:

            * * *

5.      "Bodily injury," or "property damage" or "personal and advertising injury" arising out of the failure of any "insured" to adequately supply gas, oil, water, electricity or steam. This exclusion does not apply if the failure to supply results from sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity or steam;

            * * *

51.     The 2008-2009 Commercial Liability Umbrella Policy provides Public Officials

Liability Coverage by endorsement, under form UM-1196-PE (3-03) as follows:


THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PUBLIC ENTITY – PROFESSIONAL LINES ENDORSEMENT**

This endorsement modifies the insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**

Coverage is provided by this policy for "ultimate net loss" in excess of the applicable limits of insurance specified in the Schedule of Underlying Insurance for:

            * * *

Public Officials Liability Coverage;

            * * *

The terms, conditions, exclusions and definitions of such "underlying insurance" supersede those of this policy, except:

1.      As amended by this endorsement; and

2.      As respects,

        a.     Premium;
        b.     Deductibles;
        c.     Limits of Liability; and
        d.     Renewal Agreements.

            * * *

52.     The 2008-2009 Commercial Liability Umbrella Policy also contains the following endorsement, under form UT-74g (8-95):

**PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

\* \* \*

53.     The 1998-1999, 1999-2000, and 2000-2001 Excess Liability Policies follow the form of the Public Entity Policies for those respective years.  Therefore, the Pollution Exclusion in each applicable policy year is the same as the exclusionary language in the 2008-2009 Public Entity Policy, located in Paragraph 43 of this Complaint.  The 2001-2002 Umbrella Liability Policy provides the Pollution Exclusion by endorsement under Form UM-1395 (07-96) as follows:

Exclusion J. is replaced by the following:

This policy does not apply to:

J.     (1)     "Bodily injury," "personal injury," or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

\* \* \*

    (2)      Any loss, cost or expense arising out of any:

* * *

        (b)     "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, thermal or sonic irritant or contaminant, or toxic substances, including but not limited to, smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The 2002-2003, 2003-2004, and 2004-2005 Commercial Umbrella Liability Policies provide the Pollution Exclusion by endorsement under Form UM-1130 (07-02). The endorsement replaces the Pollution Exclusion found in both Coverage A and Coverage B of the Commercial Liability Umbrella Coverage Form as follows:

**Pollution**

This insurance does not apply to:

    (1)     "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        (a)     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

* * *

    (2)     "Pollution cost or expense."

"Pollution cost or expense" is defined in the Commercial Liability Umbrella Coverage Form as including "any loss, cost or expense arising out of any . . . [c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Pollutants" is defined in the Commercial Liability Umbrella Coverage Form as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The 2006-2007 and 2007-2008 Commercial Umbrella Liability Policies provide the Pollution Exclusion under form CU 00 01 (12-04) for both Coverage A and Coverage B. The Pollution Exclusions in this form are identical to the exclusionary language in the 2008-2009 Commercial Liability Umbrella Policy, located in Paragraph 48 of this Complaint.

## COUNT 1

## DECLARATORY JUDGMENT

54.     Scottsdale and National Casualty hereby incorporate and reallege the allegations in Paragraphs 1- 53 of this Complaint as if fully set forth herein.

55.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Plaintiffs Scottsdale and National Casualty and the Crestwood Defendants concerning whether the Scottsdale and National Casualty policies provide coverage for the Underlying Lawsuits.

56.     To the extent that Chester Stranczek, Robert Stranczek, and Frank Scaccia do not qualify as insureds under the Scottsdale Primary Entity Policies issued to the Village of Crestwood, there is no coverage available to them under those Policies.

57.     To the extent that Chester Stranczek, Robert Stranczek, and Frank Scaccia do not qualify as insureds under the National Casualty Excess Liability, Umbrella Liability, and Commercial Liability Umbrella Policies issued to the Village of Crestwood, there is no coverage available to them under those Policies.

58.     Under the insurance policies issued by Scottsdale and National Casualty to the Village of Crestwood, there is no coverage available to the Crestwood Defendants to the extent the Underlying Lawsuits do not allege a fortuitous loss.

59.     Under the insurance policies issued by Scottsdale and National Casualty to the Village of Crestwood, the doctrine of known loss precludes coverage for the Village of Crestwood for all of the Underlying Lawsuits. The same doctrine precludes coverage for the Individual Crestwood Defendants for all of the Underlying Lawsuits to the extent that the Individual Crestwood Defendants knew of the loss before the inception of the Scottsdale and National Casualty policies.

60.     Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no coverage available to the Crestwood Defendants to the extent the Underlying Lawsuits do not allege an "occurrence." The definition of "occurrence" remains the same throughout all of the Public Entity Policies, which is identical to the definition provided in Paragraph 41 of this Complaint.

61.     Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no indemnity available to the Crestwood Defendants for the Underlying Lawsuits under any particular policy period to the extent there was no "bodily injury," "property damage," "personal injury" or "advertising injury" that took place during that policy period. There are no material differences in the insuring agreement and relevant definitions of the General Liability Coverage in the pre-2008-2009 Public Entity Policies, which language is similar or identical to that provided in Paragraph 41 of this Complaint.

62.    Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no indemnity available to the Crestwood Defendants for any damages awarded in the *Delarosa* Lawsuit for diminished value of property because such damage does not constitute "property damage."

63.    Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no coverage for "personal injury" available to the Crestwood Defendants because the Underlying Complaints do not allege "personal injury."

64.    Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no coverage for "personal injury" available to the Crestwood Defendants because the Underlying Complaints do not allege an "offense."

65.    Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no coverage available to the Crestwood Defendants for the Attorney General Lawsuit because the Attorney General Complaint does not allege "bodily injury," "property damage," "personal injury," or "advertising injury."

66.    Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, the pollution exclusion in those policies for "'[b]odily injury,' 'property damage' or 'personal injury' arising out of, or 'wrongful act(s)' which result in the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time" and "[a]ny loss, cost or expense arising out of any . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or . . . '[c]laim' or 'suit' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way

responding to, or assessing the effects of pollutants" preclude insurance coverage for the Crestwood Defendants for all of the Underlying Lawsuits. As stated in Paragraph 45 of this Complaint, the pollution exclusions provided in all of the Public Entity Policies are identical and apply both to the General Liability Coverage and the Public Officials Liability Coverage.

67. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, Exclusion II.1. for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for bodily injury and property damage to the Village of Crestwood for all of the Underlying Lawsuits. The same exclusion precludes coverage for bodily injury and property damage to the Individual Crestwood Defendants for all of the Underlying Lawsuits to the extent that the Individual Crestwood Defendants expected or intended any bodily injury or property damage alleged in the Underlying Complaints. This exclusionary language remains the same throughout all of the Public Entity Policies and is identical to the language provided in Paragraph 41 of this Complaint.

68. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, Exclusion II.1. for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for bodily injury and property damage to the Crestwood Defendants for the causes of action in the Underlying Complaints for willful and wanton conduct or omissions to the extent those causes of action allege bodily injury or property damage expected or intended from the standpoint of the Crestwood Defendants.

69. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, Exclusion II.1. for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for the Village of

Crestwood for bodily injury and property damage for the cause of action in the *Delarosa* Complaint alleging fraud.

70. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, Exclusion II.22. for bodily injury or property damage "arising out of the failure of any insured to adequately supply . . . water" precludes coverage for the Crestwood Defendants for coverage for bodily injury and property damage for all of the Underlying Lawsuits. This exclusionary language remains the same throughout all of the Public Entity Policies and is identical to the language provided in Paragraph 41 of this Complaint, although in the 1998-1999 and 1999-2000 Public Entity Policies, the exclusion is provided under form PEI-P-3 (01-98).

71. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, Exclusion II.12.c. for personal injury "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured" precludes coverage for the Crestwood Defendants for coverage for personal injury to the extent any Underlying Lawsuit alleges or will allege a violation of a penal statute or ordinance against the Crestwood Defendants. This exclusionary language remains the same throughout all of the Public Entity Policies and is identical to the language provided in Paragraph 41 of this Complaint.

72. Under the General Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no coverage available for the Crestwood Defendants for any relief sought in or recovered by the claimants in the Underlying Lawsuits that does not constitute "damages" as that term is used in the insuring agreements.

73.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, the pollution exclusion for "'[b]odily injury,' 'property damage' or 'personal injury' arising out of, or 'wrongful act(s)' which result in the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time" and "[a]ny loss, cost or expense arising out of any . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or . . . '[c]laim' or 'suit' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants" precludes insurance coverage for the Crestwood Defendants for all of the Underlying Lawsuits.

74.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.8.a. for claims arising out of a wrongful act "which takes place prior to the 'policy period' if the insured had knowledge of circumstances which could reasonably be expected to give rise to a 'claim'" precludes insurance coverage for the Village of Crestwood for all of the Underlying Lawsuits.  The same exclusion precludes coverage for the Individual Crestwood Defendants to the extent the Individual Crestwood Defendants had knowledge of circumstances which could reasonably be expected to give rise to a claim, prior to the 2008-2009 policy period.

75.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, there is no coverage available to the Crestwood Defendants for any relief sought or received by the claimants in the Underlying Lawsuits that does not constitute "loss" as that term is used in the insuring agreements.

76.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.1. for claims "based upon or attributable to any insured enjoying unjust enrichment; or gaining profit, advantage or remuneration to which the insured is not entitled" precludes coverage for the Crestwood Defendants for the relief sought in the *Marzano* and *Torrisi* Lawsuits for the establishment of a constructive trust of money collected by the defendants in those lawsuits for water bills.

77.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.2. for claims "[a]rising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured" precludes coverage for the Village of Crestwood for all causes of action in the Attorney General Complaint that allege a deliberate violation of statutes and/or regulations.  The same exclusion precludes coverage for the Individual Crestwood Defendants for all causes of action in the Attorney General Complaint to the extent the Individual Crestwood Defendants had knowledge of and consented to the violations.

78.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.3. for claims "[b]rought about or contributed to by fraud, dishonesty, bad faith or malicious act(s) of an insured" precludes indemnity for the Village of Crestwood for the cause of action alleging fraud in the *Delarosa* Complaint.  The same exclusion precludes indemnity for the Individual Crestwood Defendants for the fraud count in the *Delarosa* Complaint to the extent the Individual Crestwood Defendants committed fraud.

79.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.4. for "any damage arising out of 'bodily injury,' or for damage to or destruction of any property, including diminution of value or loss of use thereof" precludes coverage for the Crestwood Defendants for all causes of action in the Underlying Lawsuits that allege damage arising out of bodily injury or damage to or destruction of any property, including diminution of value or loss thereof.

80.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.5. for claims made against the insured "[f]or . . . invasion of privacy" precludes coverage for the Crestwood Defendants for the nuisance and trespass causes of action in the *Delarosa*, *Rowan*, and *Olatunde II* Complaints to the extent those causes of action allege an invasion of privacy.

81.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.9. for claims "seeking relief or redress in any form other than monetary damages, or for fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief" precludes coverage for the Crestwood Defendants for the forms of relief sought in the Underlying Lawsuits seeking declaratory and injunctive relief, disgorgement on account of the establishment of a constructive trust, orders for corrective action, costs of medical monitoring, and attorneys' fees and costs.

82.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.10. "[f]or any cost, civil fine or penalty against any insured arising out of any complaint or enforcement action from

any . . . state . . . regulatory agency" precludes coverage for the Crestwood Defendants for the civil fines and penalties sought in the Attorney General Complaint.

83.     Under the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood, Exclusion II.12.a. for claims arising out of "[p]rocurement of goods or services" precludes coverage for the Crestwood Defendants for the Underlying Lawsuits.

84.     Under the Public Officials Liability Coverage in the Public Entity Policies issued by Scottsdale to the Village of Crestwood, there is no Public Officials Liability Coverage available to the Crestwood Defendants under the pre-2008-2009 Public Entity Policies because there was no claim made during the policy periods of those Policies.

85.     Even if there were a claim made during the policy periods of the pre-2008-2009 Public Entity Policies, there would be no coverage available to the Crestwood Defendants for the Underlying Lawsuits for the same reasons provided in Paragraphs 73 through 83 of this Complaint.

86.     No other coverage parts contained in the Public Entity Policies issued by Scottsdale to the Village of Crestwood provide coverage to the Crestwood Defendants for the Underlying Lawsuits.

87.     Under the 1998-1999, 1999-2000, and 2000-2001 Excess Liability Policies issued by National Casualty to the Village of Crestwood, there is no insurance coverage available to the Crestwood Defendants for the Underlying Lawsuits because the "Underlying Insurance"—the Public Entity Policies issued by Scottsdale to the Village of Crestwood for the same policy years—provide no coverage for the Underlying Lawsuits.

88.     Under the 2001-2002 Umbrella Liability Policy issued by National Casualty to the Village of Crestwood, there is no coverage available to the Crestwood Defendants for any relief sought in the Underlying Lawsuits that does not constitute "damages," including declaratory and injunctive relief, the establishment of a constructive trust, costs of medical monitoring, statutory fines and penalties, and attorneys' fees and costs.

89.     Under the 2002-2003, 2003-2004, 2004-2005, 2005-2006, 2006-2007, 2007-2008, and 2008-2009 Commercial Liability Umbrella Policies (the "Commercial Liability Umbrella Policies") issued by National Casualty to the Village of Crestwood, there is no coverage under Coverage A or Coverage B available to the Crestwood Defendants for any relief sought in the Underlying Lawsuits that does not constitute "ultimate net loss," as that term is defined, including declaratory and injunctive relief, the establishment of a constructive trust, costs of medical monitoring, statutory fines and penalties, and attorneys' fees and costs.

90.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no coverage available to the Crestwood Defendants for the Attorney General Lawsuit because the Attorney General Complaint does not allege "bodily injury" or "property damage."

91.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies, there is no coverage available to the Crestwood Defendants to the extent the Underlying Lawsuits do not allege an "occurrence." The definition of "occurrence" remains the same throughout all of the Commercial Liability Umbrella Policies and is identical to the definition provided in Paragraph 48 of this Complaint. Under the 2001-2002 Umbrella Liability Policy, the definition of "occurrence" includes "[a]n accident,

including continuous or repeated exposure to substantially the same general harmful conditions" and "[a]n offense that results in 'personal injury.'"

92.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no indemnity available to the Crestwood Defendants for the Underlying Lawsuits under any particular policy period to the extent there was no "bodily injury" or "property damage" that took place during that policy period.

93.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no indemnity available to the Crestwood Defendants for any damages awarded in the *Delarosa* Lawsuit for diminished value of property because such damage does not constitute "property damage."

94.     Under Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no coverage available to the Village of Crestwood because the Village of Crestwood "knew that the 'bodily injury' or 'property damage' had occurred in whole or in part" before the inception of those policies.  The same provision precludes coverage for the Individual Crestwood Defendants for all of the Underlying Lawsuits to the extent that the Individual Crestwood Defendants knew of bodily injury or property damage before the inception of the Commercial Liability Umbrella Policies.

95.     Under the 2001-2002 Umbrella Liability Policy, the pollution exclusion for "'[b]odily injury,' 'personal injury,' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time" and for "[a]ny loss, cost or expense arising out of

any . . . '[c]laim' or 'suit' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants" precludes insurance coverage for the Crestwood Defendants for all of the Underlying Lawsuits.

96.     Under Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, the applicable pollution exclusions in each of those policies—quoted or referenced in Paragraph 53 of this Complaint—preclude insurance coverage for the Crestwood Defendants for all of the Underlying Lawsuits.

97.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, Exclusion 2.a. for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for bodily injury and property damage to the Village of Crestwood for all of the Underlying Complaints.  The same exclusion precludes coverage for bodily injury and property damage to the Individual Crestwood Defendants for all of the Underlying Lawsuits to the extent that the Individual Crestwood Defendants expected or intended any bodily injury or property damage alleged in the Underlying Complaints.  This exclusionary language remains the same throughout all of the Commercial Liability Umbrella Policies.  The exclusion is provided under Exclusion A in the 2001-2002 Umbrella Liability Policy.

98.     Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, the exclusion for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for bodily injury and property damage to the

Crestwood Defendants for the causes of action for willful and wanton conduct or omissions to the extent those causes of action allege bodily injury or property damage expected or intended from the standpoint of the any insureds.

99. Under the 2001-2002 Umbrella Liability Policy and Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, the exclusion for bodily injury or property damage "expected or intended from the standpoint of the insured" precludes coverage for the Village of Crestwood for bodily injury and property damage for the cause of action in the *Delarosa* Complaint alleging fraud.

100. Under Coverage A of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, Exclusion 2.r. for "'bodily injury' arising out of 'personal and advertising injury'" precludes coverage for the Crestwood Defendants for any "personal and advertising injury" alleged in the Underlying Complaints.

101. Under the 2001-2002 Umbrella Liability Policy and Coverage B of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no indemnity available to the Crestwood Defendants for the Underlying Lawsuits under any particular policy period to the extent there was no "offense" during that policy period.

102. Under the 2001-2002 Umbrella Liability Policy issued by National Casualty to the Village of Crestwood, there is no coverage for "personal injury" or "advertising injury" available to the Crestwood Defendants because the Underlying Complaints do not allege "personal injury" or "advertising injury."

103.    Under Coverage B of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, there is no coverage for "personal and advertising injury" available to the Crestwood Defendants because the Underlying Complaints do not allege "personal and advertising injury."

104.    Under Coverage B of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, the applicable pollution exclusions in each of those policies—quoted or referenced in Paragraph 53 of this Complaint—preclude insurance coverage for the Crestwood Defendants for all of the Underlying Lawsuits.

105.    Under Coverage B of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, Exclusion 2.a.(1) for personal and advertising injury "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" precludes coverage for the Crestwood Defendants to the extent that any of the Crestwood Defendants caused personal and advertising injury with the knowledge that such injury would violate the rights of another and would inflict personal and advertising injury.

106.    Under Coverage B of the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, Exclusion 2.a.(6) for personal injury "[a]rising out of a breach of contract" precludes coverage for Crestwood Defendants for the causes of action in the *Marzano* and *Torrisi* Complaints that allege breach of implied contract.

107.    Under the Governmental Subdivisions—Exclusions endorsement in the 2001-2002 Umbrella Liability Policy and the Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood, Exclusion 5 for bodily injury, property damage,

and personal injury "arising out of the failure of any insured to adequately supply . . . water" precludes coverage for the Crestwood Defendants for all the Underlying Lawsuits.

108.    Under the 2008-2009 Commercial Liability Umbrella Policy issued by National Casualty to the Village of Crestwood, there is Public Officials Liability Coverage available to the Crestwood Defendants for the Underlying Lawsuits because the "underlying insurance"—the Public Officials Liability Coverage in the 2008-2009 Public Entity Policy issued by Scottsdale to the Village of Crestwood—provides no coverage for the Underlying Lawsuits.

109.    Even if there were a claim made during the policy periods of the 2004-2005, 2006-2007, and 2007-2008 Commercial Liability Umbrella Policies, during which policy years the Village of Crestwood procured Public Officials Liability Coverage from National Casualty, there would be no coverage available to the Crestwood Defendants for the Underlying Lawsuits for the same reasons provided in Paragraphs 73 through 83 of this Complaint.

110.    The underlying limits provided for in the Excess Liability, Umbrella Liability and Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood must be exhausted before coverage is available to the Crestwood Defendants under any particular Excess Liability, Umbrella Liability or Commercial Liability Umbrella Policy.

111.    There is no coverage available to the Crestwood Defendants for punitive or exemplary damages under any of the Public Entity Policies issued by Scottsdale to the Village of Crestwood or any of the Excess Liability, Umbrella Liability, or Commercial Liability Umbrella Policies issued by National Casualty to the Village of Crestwood to the extent any particular policy contains an endorsement excluding punitive and exemplary damages and/or punitive/exemplary damages are deemed uninsurable under applicable law.

112. The Crestwood Defendants must satisfy the retained limits, self-insured retentions, and/or deductibles under all applicable insurance policies issued by Scottsdale and National Casualty to the Village of Crestwood before coverage, if any, will be available under any particular policy.

113. To the extent the Village of Crestwood provided incomplete answers, failed to disclose material information, or made misrepresentations in its original and/or renewal applications for insurance, Scottsdale and National Casualty are entitled to rescind or reform all applicable policies.

114. Insurance issued to the Crestwood Defendants, other than the insurance provided by Scottsdale and National Casualty to the Village of Crestwood, provides primary coverage or must otherwise contribute to the Crestwood Defendants' defense and indemnity for the Underlying Lawsuits.

115. There may be other reasons, based on the terms of the policy or applicable law, why there is no coverage. Scottsdale and National Casualty reserve their rights with respect to all policy defenses and legal defenses. Scottsdale and National Casualty reserve their right to amend this Complaint in order to add additional defenses to coverage. Scottsdale and National Casualty reserve their rights with respect to all policy defenses and legal defenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Scottsdale Indemnity Company and National Casualty Company demand judgment against Defendants Village of Crestwood, Chester Stranczek, Robert Stranczek, Frank Scaccia, and the Nominal Defendants as follows:

(1)     Determining and declaring that the Scottsdale and National Casualty policies do not provide coverage for the Crestwood Defendants for any of the causes of action in all of the Underlying Lawsuits;

(2)     Determining and declaring that Scottsdale and National Casualty have no duty to defend or pay defense expense for the Crestwood Defendants in connection with the Underlying Lawsuits under the Scottsdale and National Casualty policies issued to the Village of Crestwood;

(3)     Determining and declaring that Scottsdale and National Casualty have no duty to indemnify the Crestwood Defendants or pay any judgment or settlement entered in the Underlying Lawsuits under the Scottsdale and National Casualty policies issued to the Village of Crestwood; and

(4)     For such other and further relief this Court may deem just and proper.

Dated: July 24, 2009

                              Respectfully submitted,

                              **SCOTTSDALE INDEMNITY COMPANY
                              and NATIONAL CASUALTY COMPANY**


                              By:_____s:/Rory T. Dunne_____
                                   One of Their Attorneys

Roderick T. Dunne
Linda J. Carwile
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 South Michigan, 20th Floor
Chicago, Illinois 60604
(312) 431-3700
(312) 431-3670 Fax
Firm ID No. 38100

and

Pro Hac Vice Pending:

Bradley M. Jones
Tony J. Kriesel
MEAGHER & GEER, PLLP
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
(612) 338-0661
(612) 338-8384 Fax